Eastern District of Kentucky
**FILED**

AUG - 7 2015

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

| | |
|---|---|
| **ARTIS ANDERSON,** | **CIVIL ACTION NO. 5:15-cv-207-KKC** |
| **Plaintiff,** | |
| **V.** | **MEMORANDUM** <br> **OPINION AND ORDER** |
| **STEVE BESHEAR, et al.,** | |
| **Defendants.** | |

*** *** ***

This matter is before the Court on Plaintiff Artis Anderson's motion for a temporary restraining order and motions to dismiss Defendant Steve Beshear and Defendant Jack Conway. (DE 4; DE 5; DE 6). Plaintiff's *pro se* motion—and *pro se* complaint—contain broad allegations of Constitutional violations. (DE 1; DE 4). The Court screened this non-prisoner, fee-paid complaint under the authority of *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999). In *Apple*, the Sixth Circuit held that a district court may conduct screening procedures to *sua sponte* dismiss a non-prisoner, fee-paid complaint "pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [if] the allegations . . . are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." 183 F.3d at 479.

**I. BACKGROUND**

**A. SUMMARY OF FACTUAL ALLEGATIONS**

In August 2012, Plaintiff met Mary Ellen Reynolds while eating in the Golden Corral. (DE 4 at 2; DE 4-1 at 4.) Plaintiff and Reynolds commenced a relationship and married on May 11, 2015. (DE 4-1 at 1.) Unfortunately, in May 2015 Reynolds experienced a number of health problems, including a urinary tract infection, requiring hospitalization.

(DE 4 at 3.) Reynolds returned home after she was discharged. (DE 4 at 3.) On May 18, 2015, Reynolds's daughter, Cheryl Webster, traveled to Reynolds's home to check on her mother's condition. (DE 4 at 3–4; DE 4-1 at 7.) Webster arrived and found Reynolds lying in bed naked. (DE 4-1 at 7, 10.) Webster alleges that she observed her mother "completely dirty with urine and feces on her person" and unresponsive; therefore, Webster called for an ambulance. (DE 4-1 at 7.) Plaintiff alleges that Webster's "claim that [Reynolds] had urine and feces on her was completely untrue to [his] knowledge." (DE 4-1 at 10.)

Woodford County Emergency Medical Services ("WCEMS") arrived. (DE 4-1 at 7, 10.) WCEMS determined that Reynolds needed medical care and also noted that Reynolds injured her ankle; however, Plaintiff asserts that he and Reynolds objected to WCEMS taking Reynolds to the hospital. (DE 4 at 4; DE 4-1 at 7, 10.) Plaintiff claims that WCEMS then took Reynolds to the hospital against her will. (DE 4 at 4.)

Reynolds spent four hours in the emergency room at Saint Joseph's hospital. (DE 4 at 4.) Plaintiff contends that "she was released[; h]owever, because of her weakness and an injured foot . . ., the Plaintiff asked them to keep her overnight until he could obtain a wheelchair." (DE 4 at 4.) Plaintiff states that the hospital admitted Reynolds and—a few days later—Reynolds suffered a stroke while receiving treatment and care for her May 18 condition. (DE 4 at 4.) Less than a week after suffering a stroke, Saint Joseph's hospital discharged Reynolds and she is receiving continued care from The Willows at Citation. (DE 1 at 4.)

After learning that Reynolds suffered a stroke, Webster initiated a guardianship proceeding in Woodford District Court. (DE 4 at 4; DE 4-1 at 7–9.) Webster and a doctor filed affidavits with the court, and the court held a guardianship hearing on May 29, 2015. (DE 1 at 3; DE 4 at 4.) Plaintiff received timely notice of the guardianship petition, and

2

Plaintiff appeared at the guardianship hearing with retained counsel. (DE 1 at 4.) After the guardianship hearing, the Woodford District Court appointed Melinda Meade as Reynolds's guardian. (DE 1 at 3.)

On June 22, 2015, Plaintiff filed an action in Woodford Circuit Court "seeking a Writ of Prohibition" because Plaintiff objected, among other things, to the Woodford District Court's guardianship decision and Reynolds's continued care at The Willows at Citation. (*See* DE 1 at 4.) This action is *still pending* before Woodford Circuit Court. (DE 1 at 4); *see also* (DE 6-1 at 2–3) (describing the general procedural history of Plaintiff's pending state court actions).

## B. RELIEF REQUESTED

The Court recognizes that Plaintiff is proceeding *pro se*; therefore, the Court evaluates all potential claims raised in Plaintiff's filings. The Court interprets Plaintiff's sweeping allegations as, in fact, six discrete claims. First, Plaintiff alleges that the guardianship proceeding itself and the results of the guardianship proceeding violated Plaintiff's Constitutional rights to marriage as articulated in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). (DE 1 at 5–7; DE 4 8–12.) Second, Plaintiff claims that Webster violated his Constitutional rights by attempting to annul his marriage to Reynolds. (DE 4 at 9–11.) Third, Plaintiff asserts that Kentucky statutes, KRS §§ 311.631, 387.300, are unconstitutional. (DE 1 at 6–8; DE 4 at 8–9.) Fourth, Plaintiff contends that WCEMS, Meade, and The Willows at Citation infringed Plaintiff's Constitutional rights in violation of 42 U.S.C. § 1983. (DE 1 at 7–8; DE 4 at 13.) Fifth, he alleges a violation of 42 U.S.C. § 1985. (DE 1 at 11; DE 4 at 13.) And sixth, Plaintiff claims that Meade and The Willows at Citation submitted false claims in violation of 31 U.S.C. §§ 3729–3733. (DE 1 at 9.)

3

Plaintiff requests a temporary restraining order, injunctive relief, and money damages totaling over $21 million. (DE 1 at 10–11.)

## II. DISCUSSION

### A. RIGHTS UNDER *OBERGEFELL*

Plaintiff's claim that his Constitutional rights in guardianship proceedings have been infringed pursuant to the principles enunciated in *Obergefell* is founded on a mistaken reading of the decision. *Obergefell* established that both same- and opposite-sex couples have the right *to marry*. 135 S. Ct. at 2601. *Obergefell* protects individuals' right to participate in the act and institution of marriage. *Id.* at 2608. But the right to participate in the institution of marriage does not alter the substantive and procedural rights in guardianship matters. *See Woods v. Commonwealth*, 142 S.W.3d 24, 50–51 (Ky. 2004). Kentucky has a strong interest in guardianship matters, has developed a comprehensive statutory scheme, and has upheld the Constitutionality of this scheme. *See id., see also* KRS §§ 311.621–.643, 387.020, 387.520.

Although Plaintiff feels strongly that Reynolds should not have a guardian and that he should be able to participate in Reynolds's health care decisions, his claim that the guardianship proceedings violated his rights under the principles articulated in *Obergefell* "lack[s] the legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple*, 183 F.3d at 480; *see also Russell v. Vittands*, 79 F. App'x 859, 861 (6th Cir. 2003) ("To the extent [Anderson] is challenging the results of his state court cases, his claim is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision.")

4

**B. ATTEMPTED ANNULMENT**

Plaintiff's assertion that Webster has attempted to annul his marriage to Reynolds is premature, and this is not the proper forum to contest an attempted annulment. First, Plaintiff has not demonstrated that Webster has initiated an annulment proceeding. Therefore, Plaintiff's claim is premature. Second, a decree of annulment must be appealed within the state court system. *See* KRS §§ 402.030, 402.250, 403.120. Accordingly, this Court lacks subject matter jurisdiction. *Apple,* 183 F.3d at 480; *Russell*, 79 F. App'x at 861.

**C. KENTUCKY STATUTES**

Plaintiff contends that KRS § 311.631 is unconstitutional "because it places the spouse third in line as a decision maker for his / her marriage partner" and that this violates the Constitutional rights established in *Obergefell.* (DE 4 at 8–9.) For the reasons stated above, this claim misreads *Obergefell's* holding and lacks the legal plausibility necessary for subject matter jurisdiction. *Supra* Part II.A.

Plaintiff argues that KRS § 387.300 is unconstitutional "because it allows a 'next friend' to usurp the rights and authority reserved to the spouse and authorizes a court appointed guardian to exercise authority over" property rights in violation of *Obergefell.* (DE 1 at 6.) First, Plaintiff's claim is founded on a mistaken understanding of the 'next friend' statute. Chapter 387 addresses the protection of minors' rights; a 'next friend' suit is commonly a parent suing to enforce the rights of their minor child. Second, Plaintiff misreads *Obergefell's* holding. *Supra* Part II.A. Therefore, his claims lack the legal plausibility necessary for subject matter jurisdiction. *Apple*, 183 F.3d at 480.

**D. 42 U.S.C. § 1983 CLAIMS**

Plaintiff claims that Defendants WCEMS, Meade, and The Willows at Citation infringed his rights in violation of 42 U.S.C. § 1983. (DE 1 at 7–8; DE 4 at 13.) To establish

5

a right to relief, a plaintiff must plead and prove "that (1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *Ziegler v. Aukerman*, 512 F.3d 777, 782–83 (6th Cir. 2008) (quotations omitted). Plaintiff asserts that the federal rights violated were his Constitutional rights established by "the Supreme Court's mandate in *Obe[r]gefell*." (DE 4 at 13.) For the reasons stated above, this claim misreads *Obergefell's* holding and lacks the legal plausibility necessary for subject matter jurisdiction. *Supra* Part II.A; *Apple*, 183 F.3d at 480.

### E. 42 U.S.C. § 1985 CLAIMS

Plaintiff also contends that there was a conspiracy to violate his rights. (DE 1 at 11; DE 4 at 13.)

> To state a § 1985 claim, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quotations omitted). Plaintiff asserts that the infringed rights that provide a basis for his § 1983 claim are the same as his § 1985 claim. For the reasons stated above, Plaintiff's § 1985 claim misreads *Obergefell's* holding and lacks the legal plausibility necessary for subject matter jurisdiction. *Supra* Parts II.A, II.D; *Apple*, 183 F.3d at 480.

### F. FALSE CLAIMS ACT

Plaintiff asserts that Meade and The Willows at Citation submitted false claims in violation of 31 U.S.C. §§ 3729–3733. (DE 1 at 9.) The basis for Plaintiff's claim is that Reynolds was admitted to The Willows at Citation after she was discharged from Saint

Joseph's Hospital. (DE 1 at 9.) Essentially, Plaintiff argues that Reynolds does not need continued care from The Willows at Citation despite Saint Joseph's Hospital having to admit Reynolds for multiple days to treat her May 18 condition and Reynolds suffering a stroke. (DE 4 at 4.) Further, Plaintiff admits that he could not provide Reynolds proper care to help her recover from her urinary tract infection. (DE 4-1 at 10.) Therefore, Plaintiff has not established that it is not in Reynolds's best interest—let alone *fraudulent*—that she receive care from The Willows at Citation. Accordingly, Plaintiff's FCA claim lacks the legal plausibility necessary for subject matter jurisdiction. *Apple*, 183 F.3d at 480; *see also United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 61314 (6th Cir. 2015) (noting that a *qui tam* relator must be a true whistleblower to have standing to bring a claim under the FCA and if the relator does not having standing, then the federal courts do not have subject matter jurisdiction over the relator's FCA claim).

### III. CONCLUSION

For the reasons discussed herein, all of Plaintiff's claims lack the legal plausibility necessary for subject matter jurisdiction. *Apple*, 183 F.3d at 480. Accordingly, **IT IS ORDERED** as follows:

 1. Plaintiff's motion for a temporary restraining order (DE 4) is **DENIED**;

 2. Defendant Beshear's motion to dismiss (DE 5) is **DENIED AS MOOT**;

 3. Defendant Conway's motion to dismiss (DE 6) is **DENIED AS MOOT**;

 4. Plaintiff's claims under *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) are **DISMISSED WITH PREJUDICE**;

 5. Plaintiff's claims concerning annulment of Plaintiff's marriage are **DISMISSED WITH PREJUDICE**;

6. Plaintiff's claims under KRS §§ 311.631, 387.300 are **DISMISSED WITH PREJUDICE**;

7. Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE**;

8. Plaintiff's claims under 42 U.S.C. § 1985 are **DISMISSED WITH PREJUDICE**;

9. Plaintiff's claims under the 31 U.S.C. §§ 3729–3733 are **DISMISSED WITH PREJUDICE**; and

10. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

Dated August 7, 2015.



Signed By:
*Karen K. Caldwell*
United States District Judge

8