UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **ARTIS ANDERSON,** | **CIVIL ACTION NO. 5:15-cv-207-KKC** |
| **Plaintiff,** | |
| V. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| **STEVE BESHEAR, et al.,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Artis Anderson's motion (DE 8) to set aside the Court's August 7, 2015 Order, which dismissed this action and denied Anderson's motion for a Temporary Restraining Order. For reasons stated below, the Court will deny the motion.

## I. BACKGROUND

The Court screened Plaintiff's complaint under the authority of *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999). (DE 7 at 1.) In *Apple*, the Sixth Circuit held that a district court may conduct screening procedures to *sua sponte* dismiss a non-prisoner, fee-paid complaint "pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [if] the allegations . . . are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." 183 F.3d at 479. Plaintiff's renewed motion provides no basis for departure from the Court's prior decision.

**A. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was married to Mary Ellen Reynolds on May 11, 2015. (DE 4-1 at 1.) Unfortunately, in May 2015 Reynolds experienced a number of health problems, including a

urinary tract infection and stroke, eventually requiring hospitalization. (DE 4 at 3.) Prior to her stroke, Reynolds's daughter, Cheryl Webster, traveled to Reynolds' home to check on her mother's condition. (DE 4 at 3–4; DE 4-1 at 7.) Webster arrived and found Reynolds lying in bed naked. (DE 4-1 at 7, 10.) Webster alleges that she observed her mother "completely dirty with urine and feces on her person" and unresponsive; therefore, Webster called for an ambulance. (DE 4-1 at 7.) Plaintiff alleges that Webster's "claim that [Reynolds] had urine and feces on her was completely untrue to [his] knowledge." (DE 4-1 at 10.)

Once Woodford County Emergency Medical Services ("WCEMS") arrived, they determined that Reynolds needed medical care and also noted that Reynolds injured her ankle; however, Plaintiff asserts that over his and Reynolds' objections, WCEMS took Reynolds to the hospital against her will. (DE 4 at 4; DE 4-1 at 7, 10.) Reynolds spent four hours in the emergency room at Saint Joseph's hospital. (DE 4 at 4.) Plaintiff contends that "she was released[; h]owever, because of her weakness and an injured foot . . ., the Plaintiff asked them to keep her overnight until he could obtain a wheelchair." (DE 4 at 4.) Plaintiff states that the hospital held Reynolds and—a few *days* later—Reynolds suffered a stroke while receiving treatment and care for her May 18 condition. (DE 4 at 4; DE 8 at 2.) Less than a week after suffering a stroke, Saint Joseph's hospital discharged Reynolds, but she is receiving continued care from The Willows at Citation. (DE 1 at 4.)

After learning that Reynolds suffered a stroke, Webster initiated a guardianship proceeding in Woodford District Court. (DE 4 at 4; DE 4-1 at 7–9.) Webster and a doctor filed affidavits with the court, and the court held a guardianship hearing on May 29, 2015. (DE 1 at 3; DE 4 at 4.) Plaintiff received timely notice of the guardianship petition, and appeared at the guardianship hearing. (DE 1 at 4; DE 8 at 2.) After the guardianship

2

hearing, the Woodford District Court appointed Melinda Meade as Reynolds's guardian. (DE 1 at 3.) On June 22, 2015, Plaintiff filed an action in Woodford Circuit Court "seeking a Writ of Prohibition" because Plaintiff objected, among other things, to the Woodford District Court's guardianship decision and Reynolds' continued care at The Willows at Citation. (*See* DE 1 at 4.)

In the Order now under consideration, the Court dismissed all of Plaintiff's claims. First, the alleged violation of Plaintiff's right to marriage under *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) was rejected because Plaintiff's right to be married was not infringed by the state court's appointment of a guardian.[1] (DE 7 at 4.) Second, no constitutional violation could be grounded in an alleged annulment proceeding because Plaintiff did not allege any such proceeding had occurred, and even if it had, this Court is not the proper venue for appeal. (DE 7 at 5.) Third, constitutional challenges to Kentucky Statutes were rejected as implausible due to Plaintiff's misunderstandings of both the *Obergefell* holding—as explained above—and the import of a "next friend" suit. (DE 7 at 5.) Fourth and Fifth, Plaintiff's §§ 1983 and 1985 claims were also denied due to Plaintiff's misreading of *Obergefell*. (DE 7 at 5–6.) Finally, Plaintiff's False Claims Act allegations were rejected as failing to provide adequate grounds for the Court to exercise subject matter jurisdiction. (DE 7 at 6–7.)

**B. BASES FOR RECONSIDERATION**

Plaintiff's current motion presents both factual and legal arguments as grounds for reconsideration. First, Plaintiff alleges error in several of the Court's factual findings. (DE 8

---

[1] "To the extent [Anderson] is challenging the results of his state court cases, his claim is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Russell v. Vittands*, 79 F. App'x 859, 861 (6th Cir. 2003).

at 1–2.) Second, new facts are offered in support of the proposed relief. (DE 8 at 2–3.) Third, *Ferguson v. Ferguson*, 610 S.W.2d 925 (Ct. App. 1980), among other state and Supreme Court decisions, is cited as supporting Plaintiff's marriage interference claims. (DE 8 at 3–4.) And fourth, Plaintiff points to the holding in *O'Connor v. Donaldson*, 422 U.S. 563 (1975) to bolster his §§ 1983 and 1985 claims. However, as explained below, nothing in Plaintiff's motion persuades the Court to alter its earlier decision.

## II. DISCUSSION

### A. FACTUAL ERRORS

Plaintiff disputes the Court's factual findings regarding the inception of his relationship with Mary Reynolds, the necessity of Ms. Reynolds' hospitalization following her UTI, and the representation status of the Plaintiff at the guardianship proceedings. These factual findings were irrelevant to the Court's decision and were only provided as context. Thus, these objections do not require the Court to alter its prior ruling.

### B. NEW FACTS

Plaintiff offers new exhibits in support of his assertions that Ms. Reynolds was not in need of medical care on May 18th; that Ms. Reynolds' daughter, Ms. Webster, did not have Ms. Reynolds' best interest at heart when she called WCEMS on May 18th; and that neither Ms. Webster nor Mr. Robert Horn were valid candidates for guardianship under state law. In the first instance, the Court must question the first two assertions given that Ms. Reynolds suffered a stroke shortly after May 18th. More importantly, however, all of these contentions are moot.

The first two factual allegations concern conduct only by Ms. Webster, a private actor. Her conduct cannot provide the basis for any of the Plaintiff's claims. *See, e.g.*, *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) ("[w]hen Congress enacted § 1983 as the statutory

4

remedy for violations of the Constitution, it specified that the conduct at issue must have occurred under color of' state law"). Private action will only be grounds for a §1983 claim "if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal citations and quotation marks omitted). Plaintiff fails to allege any facts which would establish the requisite nexus between Ms. Webster and the state.

Likewise, the contentions regarding guardianship applicants are mooted by Plaintiff's own admission that neither Ms. Webster nor Mr. Horn was selected as Ms. Reynolds' guardian. (DE 1 at 3.) Even if Ms. Webster or Mr. Horn were appointed as guardian, the result here would remain unchanged. As the Court explained in its prior order, under *Russell v. Vittands*, 79 F. App'x 859, 861 (6th Cir. 2003), this Court is not the appropriate forum for challenging the state's guardianship ruling. (DE 7 at 4.)

## C. MARITAL INTERFERENCE CLAIMS

Plaintiff cites *Ferguson v. Ferguson*, 610 S.W.2d 925 (Ct. App. 1980) for the proposition that third parties "CANNOT attack a marriage," and Plaintiff includes citations to, *inter alia*, *Loving v. Virginia*, 388 U.S. 1 (1967), and *Zablocki v. Redhail*, 434 U.S. 372 (1978), to bolster his marital interference claims. (DE 8 at 3–4.) However, these citations, like Plaintiff's earlier resort to *Obergefell*, are based on a fundamental misunderstanding of the rights found violated in those cases.

Plaintiff has admitted that he was allowed to marry Ms. Reynolds. (DE 4-1 at 1.) Thus, Plaintiff's right to *marry* as clarified in *Zablocki* and *Loving*, has not been impugned. Nor can it be validly contended that state guardianship proceedings "concern[ ] a relationship lying within the zone of privacy" like the "sacred precincts of marital

bedrooms." *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). And as the Plaintiff was advised in this Court's prior order, the constitutionality of the Kentucky's comprehensive guardianship scheme has previously been addressed and upheld. (DE 7 at 4.)

Furthermore, *Ferguson*'s holding addresses a collateral challenge to the validity of a marriage in state court. 610 S.W.2d 925, 926 (Ky. Ct. App. 1980). As the Court's prior opinion explained, Plaintiff does not allege any collateral challenge to the validity of his marriage has occurred. (DE 7 at 5.) In addition, any appeal of such a challenge must be heard in state courts, as was the case in *Ferguson* itself. 610 S.W.2d 925, 926 (Ky. Ct. App. 1980). Consequently, the Court is not moved to set aside its prior holdings on Plaintiff's marital interference claims.

### D. *O'CONNOR V. DONALDSON*

Finally, Plaintiff would have the Court find an alternative basis for his §§ 1983 and 1985 claims in *O'Connor v. Donaldson*, 422 U.S. 563 (1975). (DE 8 at 3.) Yet, again, precedent cannot do the work Plaintiff would like. *O'Connor* does not, as Plaintiff argues, support the broad proposition that the state "CANNOT hold a person against their will who has family and friends to care for them." (DE 8 at 3.) In that case, the plaintiff was involuntarily committed, under civil commitment procedures, to a state mental hospital for 15 years and sued the hospital's superintendent and others alleging that they had deprived him of his constitutional right to liberty.

The Court took great pains to clarify that the issue before it was "a narrow one" and that it was not deciding whether a state could involuntarily confine a person "to ensure his own survival or safety." *Id* 573-74. In that case, the jury specifically found that no such grounds for continued confinement existed. *Id*. However, "the constitutional right to liberty is not violated if the State takes custody of a citizen following a judicial determination that

6

he is unable to care for himself or is a serious risk to the safety of himself or others." *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998). Similarly, the constitutional right to liberty is not violated where the state orders an individual into the custody of a guardian pursuant to state guardianship proceedings. Thus, *O'Connor* provides no new basis for Plaintiff's claims

### III. CONCLUSION

Plaintiff has made it abundantly clear that he feels the events concerning his wife have unjustly interfered with his marriage. Absent some action by the state in violation of a recognized federal right, this Court can provide no relief. Plaintiff should be advised that his efforts would be better spent towards litigating his ongoing claims in the appropriate state court forums.

For the reasons discussed herein, all of Plaintiff's claims continue to lack the legal plausibility necessary for subject matter jurisdiction. *Apple*, 183 F.3d at 480. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to set aside this Court's order dismissing Plaintiff's cause of action and for reconsideration of Plaintiff's motion for temporary restraining order (DE 8) is **DENIED**.

Dated September 14, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY