UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ARTIS ANDERSON,<br><br>    **Plaintiff,**<br><br>V.<br><br>STEVE BESHEAR, et al.,<br><br>    **Defendants.** | CIVIL ACTION NO. 5:15-cv-207-KKC<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff Artis Anderson's second motion to set aside this Court's August 7, 2015, Order, his motion to amend his complaint, and his motion for a preliminary injunction. (DE 10; DE 11). For reasons stated below, the Court will deny the Plaintiff's motions.

## I. BACKGROUND

The Court screened Plaintiff's complaint under the authority of *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999). (DE 7 at 1.) In *Apple*, the Sixth Circuit held that a district court may conduct screening procedures to *sua sponte* dismiss a non-prisoner, fee-paid complaint "pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure [if] the allegations . . . are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." 183 F.3d at 479. This Court reaffirmed that decision in denying Plaintiff's first motion to vacate. (DE 9.) None of Plaintiff's renewed motions provides a basis for departure from the Court's prior decisions.

A. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was married to Mary Ellen Reynolds on May 11, 2015. (DE 4-1 at 1.) Unfortunately, in May 2015 Reynolds experienced a number of health problems, including a urinary tract infection and stroke, eventually requiring hospitalization. (DE 4 at 3.) Prior to her stroke, Reynolds's daughter, Cheryl Webster, traveled to Reynolds' home to check on her mother's condition. (DE 4 at 3–4; DE 4-1 at 7.) On May 18, Webster arrived and found Reynolds lying in bed naked. (DE 4-1 at 7, 10.) Webster alleges that she observed her mother "completely dirty with urine and feces on her person" and unresponsive; therefore, Webster called for an ambulance. (DE 4-1 at 7.) Plaintiff alleges that Webster's "claim that [Reynolds] had urine and feces on her was completely untrue to [his] knowledge." (DE 4-1 at 10.)

Once Woodford County Emergency Medical Services ("WCEMS") arrived, they determined that Reynolds needed medical care and also noted that Reynolds injured her ankle; however, Plaintiff asserts that over his and Reynolds objections, WCEMS took Reynolds to the hospital against her will. (DE 4 at 4; DE 4-1 at 7, 10.) Reynolds spent four hours in the emergency room at Saint Joseph's hospital. (DE 4 at 4.) Plaintiff contends that "she was released[; h]owever, because of her weakness and an injured foot . . ., the Plaintiff asked them to keep her overnight until he could obtain a wheelchair." (DE 4 at 4.) Plaintiff states that the hospital held Reynolds and—a few *days* later—Reynolds suffered a stroke while receiving treatment and care for her May 18 condition. (DE 4 at 4; DE 8 at 2.) Less than a week after suffering a stroke, Saint Joseph's hospital discharged Reynolds, but she is receiving continued care from The Willows at Citation. (DE 1 at 4.)

After learning that Reynolds suffered a stroke, Webster initiated a guardianship proceeding in Woodford District Court. (DE 4 at 4; DE 4-1 at 7–9.) Webster and a doctor

2

filed affidavits with the court, and the court held a guardianship hearing on May 29, 2015. (DE 1 at 3; DE 4 at 4.) Plaintiff received timely notice of the guardianship petition, and appeared at the guardianship hearing. (DE 1 at 4; DE 8 at 2.) After the guardianship hearing, the Woodford District Court appointed Melinda Meade as Reynolds's guardian. (DE 1 at 3.) On June 22, 2015, Plaintiff filed an action in Woodford Circuit Court "seeking a Writ of Prohibition" because Plaintiff objected, among other things, to the Woodford District Court's guardianship decision and Reynolds's continued care at The Willows at Citation. (*See* DE 1 at 4.)

In the Order now under consideration, the Court dismissed all of Plaintiff's claims. First, the alleged violation of Plaintiff's right to marriage under *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) was rejected because Plaintiff's right to be married was not infringed by the state court's appointment of a guardian.[1] (DE 7 at 4.) Second, no constitutional violation could be grounded in an alleged annulment proceeding because Plaintiff did not allege any such proceeding had occurred, and even if it had, this Court is not the proper venue for appeal. (DE 7 at 5.) Third, constitutional challenges to Kentucky Statutes were rejected as implausible due to Plaintiff's misunderstandings of both the *Obergefell* holding—as explained above—and the import of a "next friend" suit. (DE 7 at 5.) Fourth and Fifth, Plaintiff's §§ 1983 and 1985 claims were also denied due to Plaintiff's misreading of *Obergefell*. (DE 7 at 5–6.) Finally, Plaintiff's False Claims Act allegations were rejected as failing to provide adequate grounds for the Court to exercise subject matter jurisdiction. (DE 7 at 6–7.)

---

[1] "To the extent [Anderson] is challenging the results of his state court cases, his claim is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Russell v. Vittands*, 79 F. App'x 859, 861 (6th Cir. 2003).

3

Plaintiff has done little more than restyle his original allegations with the addition of some new speculation. None of the information contained in the instant filings persuades this Court to sway from its earlier holdings.

## II. DISCUSSION

**A. MOTIONS TO VACATE AND FOR PRELIMINARY INJUNCTION**

In essence, Plaintiff's claims are based on one of two theories, either that the state court guardianship proceedings were improper, or that those proceedings and the resulting actions of the appointed guardian have violated his right to marriage. The Court will reiterate for a third time that, as stated in *Russell v. Vittands*, 79 F. App'x 859, 861 (6th Cir. 2003), this Court is not the appropriate forum for challenging the state's guardianship ruling. (DE 7 at 4.) Likewise, the Court will remind Plaintiff that he misunderstands the right to marriage. Plaintiff has admitted that he was allowed to marry Ms. Reynolds. (DE 4-1 at 1.) Thus, Plaintiff's right to *marry* as clarified in *Zablocki* and *Loving*, has not been impugned. And as the Plaintiff was already advised, the constitutionality of the Kentucky's comprehensive guardianship scheme has previously been addressed and upheld. (DE 7 at 4.)

Plaintiff has reasserted his alternative theory for his §§ 1983 and 1985 claims based on *O'Connor v. Donaldson*, 422 U.S. 563 (1975). (DE 8 at 3.) Again, the Court will remind Plaintiff that this precedent cannot do the work he would like. *O'Connor* does not support the broad proposition that the state "CANNOT hold a person against their will who has family and friends to care for them." (DE 8 at 3.) The Court in *O'Connor* takes great pains to clarify that "the issue before [them was] a narrow one" and that they were not deciding whether a state could involuntarily confine a person "to ensure his own survival or safety," because a "jury found [that] ground[ ] for continued confinement" was lacking. 422 U.S. 563,

573–74 (1975). *O'Connor* provides no new basis for Plaintiff's claims. Accordingly, Plaintiff's motions for a preliminary injunction and to vacate will be denied for the reasons set forth in this Court's previous orders denying Plaintiff's motion for a temporary restraining order, dismissing his claims, and denying his motion for reconsideration. (DE 7; DE 9.)

**B. MOTION TO AMEND**

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleadings with the court's leave, which "[t]he court should freely give. . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, need not grant leave to amend under Rule 15 if the amendment would be futile. *Miller v. Calhoun Cnty.,* 408 F.3d 803, 817 (6th Cir. 2005); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 519 (6th Cir. 2010) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller,* 408 F.3d at 807 (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.,* 632 F.2d 21, 23 (6th Cir. 1980)).

The only truly "new" allegation contained in Plaintiff's tendered amended complaint is his Fourth Amendment claim.[2] (DE 10-1 at 3.) Plaintiff alleges that Defendant Costigan, a member of the Versailles Police Department, violated his rights to privacy and freedom from unreasonable search by wearing a police body camera into his wife's home and recording video and audio of the Plaintiff and his wife. Plaintiff bears the burden of showing that his Fourth Amendment rights were violated. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998). Plaintiff must establish both that he had a subjective expectation of privacy in the searched premises and that society is prepared to recognize

---

[2] The Court notes that Plaintiff has restyled several of his original claims as conspiracy claims. However, the alteration in form adds nothing to the claims' merit. (DE 10-1 at 10–13.)

5

that expectation as legitimate. *Id.* (citation omitted). Whether or not Plaintiff could satisfy the first prong of this test, it is clear that he has not met the second.

"[T]he Fourth Amendment protects people, not places; [w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). Plaintiff could not have had a reasonable expectation of privacy in a conversation with his wife that took place in full view of a police officer and two paramedics. Thus, Officer Costigan's recording of those events could not have violated Plaintiff's rights under the Fourth Amendment because Plaintiff made no effort to keep that interaction private. *See On Lee v. United States*, 343 U.S. 747, 753–54 (1952) ("Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard . . . [w]e find no violation of the Fourth Amendment here."). Granting Plaintiff leave to amend for purposes of adding this claim would be futile.

### III. CONCLUSION

Plaintiff has made it abundantly clear that he feels the events concerning his wife have unjustly interfered with his marriage. However, this Court is not the proper forum for airing grievances over every perceived mistreatment by ones in-laws. This Court will again advise Plaintiff that his efforts would be better spent towards litigating his ongoing claims in the appropriate state court forums.

For the reasons discussed herein, both Plaintiff's new and repeated claims continue to lack the legal plausibility necessary for subject matter jurisdiction. *Apple*, 183 F.3d at 480.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's motions to vacate this Court's order dismissing his cause of action and to amend his complaint (DE 10) are **DENIED**; and

2. Plaintiff's motion for a preliminary injunction (DE 11) is **DENIED**.

Dated May 31, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY